THOMAS E. MOSS, IDAHO BAR NO. 1059
UNITED STATES ATTORNEY
**WARREN S. DERBIDGE, IDAHO BAR NO. 1214**
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 PARK BOULEVARD, SUITE 600
BOSIE, ID  83712-9903
TELEPHONE:  (208) 334-1211
FACSIMILE: (208) 334-1414

Lauren E. Hash
Office of Consumer Litigation
Department of Justice
P.O. Box 386
Washington, D.C. 20004
Tel: (202) 353-1991
Fax: 202-514-8742
lauren.hash@usdoj.gov
Texas Bar No. 24050728
Attorney for the United States of America

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>SUN VALLEY JUICE CO.,<br>a corporation, and<br>JOHN R. SCHERER, and<br>WILLIAM JEREMY SCHERER,<br>individuals,<br><br>    Defendants. | Case No. _____<br><br>COMPLAINT FOR<br><u>PERMANENT INJUNCTION</u> |

Plaintiff, the United States of America, by its undersigned attorneys, respectfully represents to this Court as follows:

1.  This statutory injunction proceeding is brought under the Federal Food, Drug, and Cosmetic Act ("the Act"), 21 U.S.C. § 332(a), and the inherent authority of this Court, to enjoin and restrain Sun Valley Juice Co. ("Sun Valley"), a corporation, and John R. Scherer and William Jeremy Scherer, individuals (collectively, "Defendants"), from violating 21 U.S.C. § 331(k) by causing any food that is held for sale after shipment in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(a)(4).

COMPLAINT FOR PERMANENT INJUNCTION - 1

2. This Court has jurisdiction over this action pursuant to 21 U.S.C. § 332(a) and 28 U.S.C. §§ 1331, 1337, and 1345. Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c).

## THE DEFENDANTS

3. Defendant Sun Valley, a corporation, is incorporated under the laws of the State of Idaho and is doing business at 101 North Clear Creek Road, Number 3, Ketchum, Idaho, within the jurisdiction of this court. In addition to its two owners, the firm has one regular, part-time employee.

4. Defendant John R. Scherer is the founder, president, and 75% majority owner of Sun Valley. He has ultimate authority for the overall operations of Sun Valley and makes all of the firm's purchases, sales, and deliveries. Additionally, he developed the firm's Hazard Analysis and Critical Control Point ("HACCP") plan.

5. Defendant William Jeremy Scherer, the son of John R. Scherer, is a 25% co-owner of Sun Valley and he oversees all of its day-to-day juice production and packaging operations. The firm's sole production employee reports directly to him.

6. The Defendants have been, and are now, engaged at their juice processing plant at 101 North Clear Creek Road, Number 3, Ketchum, Idaho, in receiving, processing, preparing, packing, holding, and distributing unpasteurized, fresh-squeezed, orange and grapefruit juices ("juice"). Defendants' juice is "food" within the meaning of 21 U.S.C. § 321(f).

7. The Defendants' juice is made from whole Valencia oranges and red Texas grapefruits shipped in interstate commerce from growers in Arizona, California, Florida, and Texas.

## UNPASTEURIZED JUICE SAFETY

8. Unpasteurized, fresh-squeezed juice is a high-risk food that has been shown to be a source of *Salmonella* and other bacterial pathogens. Exposure to *Salmonella* can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems. Otherwise healthy individuals may suffer short-term symptoms such as high fever, severe headache, vomiting, nausea, abdominal pain, and diarrhea. Long-term complications can include severe arthritis.

COMPLAINT FOR PERMANENT INJUNCTION - 2

9. The production of juice without proper monitoring and sanitation controls creates optimal conditions for the proliferation of *Salmonella* and other pathogenic microorganisms.

## REGULATORY FRAMEWORK

10. In order to control for potential contamination hazards known to occur during the juice manufacturing process, producers must follow the juice HACCP regulations found in 21 C.F.R. Part 120.

11. Under the HACCP regulations, every processor of juice must conduct, or have conducted for it, a hazard analysis to determine whether there are any food safety hazards that are reasonably likely to occur during the processing of each kind of juice that it produces. Whenever a hazard analysis identifies one or more food safety hazards that are reasonably likely to occur, such processor must, pursuant to 21 C.F.R. § 120.7(a), have and implement an adequate written HACCP plan to control the identified food safety hazard(s).

12. A HACCP plan must identify critical control points, which are points, steps, or procedures in a food manufacturing process at which controls can be applied to prevent, eliminate, or reduce to acceptable levels, a food safety hazard. 21 C.F.R. §§ 120.3(d), 120.7(a)(5).

13. At each critical control point, a HACCP plan must also identify critical limits, which are the maximum or minimum values to which a physical, biological, or chemical parameter must be controlled at a critical control point to prevent, eliminate, or reduce to an acceptable level, the occurrence of the identified food safety hazard(s). 21 C.F.R. §§ 120.3(e), 120.8(b)(3).

14. The HACCP regulations specifically instruct processors of unpasteurized juice to include control measures in their HACCP plan that will consistently produce, at a minimum, a 5-log reduction in the most resistant microorganism of public health significance likely to occur in the juice. 21 C.F.R. § 120.24(a).

15. To verify that these control measures are meeting the 5-log reduction standard, unpasteurized juice processors must also analyze their finished juice for biotype I *Escherichia coli* ("*E. coli*"). See 21 C.F.R. § 120.25. The presence of *E. coli* in processed juice is an indicator of possible *Salmonella* contamination. *E. coli* is also a potential human health risk in

COMPLAINT FOR PERMANENT INJUNCTION - 3

its own right because certain strains of the bacteria are pathogenic and can cause diarrhea, vomiting, and even death, especially in young children, frail or elderly people, and others with weakened immune systems.

    16.  The HACCP regulations further require that juice processors monitor and record sanitation conditions and practices during juice processing to ensure conformance with Good Manufacturing Practice ("GMP").  21 C.F.R. §§ 120.5-.6.

    17.  Each juice processor must verify that its HACCP plan is adequate to control food safety hazards that are reasonably likely to occur, and that the plan is being effectively implemented.  21 C.F.R. § 120.11(a)-(b).

    18.  The development, validation, and verification of the HACCP plan must be performed by an individual who has successfully completed training in the application of HACCP principles to juice processing.  21 C.F.R. § 120.13(b).

<u>DEFENDANTS' CONDUCT AND VIOLATIONS</u>

    19.  Defendants violate 21 U.S.C. § 331(k) by causing juice to become adulterated after shipment in interstate commerce.

    20.  Defendants' juice is adulterated within the meaning of 21 U.S.C. § 342(a)(4), in that it has been prepared, processed, packed, and held under insanitary conditions whereby it may have been rendered injurious to health.

    21.  Defendants have failed to, and continue to fail to:

        (a)  include control measures in their HACCP plan that will consistently produce, at a minimum, a 5-log reduction in the most resistant microorganism of public health significance likely to occur in unpasteurized, fresh-squeezed citrus juice, 21 C.F.R. § 120.24(a);

        (b)  analyze their finished juice for *E. coli*, 21 C.F.R. § 120.25;

        (c)  list in their HACCP plan the critical control points and associated critical limits designed to control food hazards inside and outside the plant processing environment, 21 C.F.R. § 120.8(b);

        (d)  monitor and document sanitation conditions and practices during juice processing to ensure conformance with GMP, 21 C.F.R. §§ 120.5-.6; and

COMPLAINT FOR PERMANENT INJUNCTION - 4

(e) have their HACCP plan developed, verified, and validated by an individual who has successfully completed training in the application of HACCP principles to juice processing, 21 C.F.R. § 120.13.

### DEFENDANTS' HISTORY OF VIOLATIONS

#### January 2006 Inspection

22.  The Food and Drug Administration ("FDA") most recently inspected Defendants' plant on January 23-27, 2006.  During this inspection, FDA observed serious deficiencies in the Defendants' HACCP plan, their implementation and verification of that plan, and their sanitation practices.  Many of these deficiencies had been observed during previous inspections.  The Form FDA 483 List of Inspectional Observations that FDA investigators issued to Mr. John Scherer at the conclusion of the inspection outlined observations including, but not limited to:

(a) Defendants failed to include control measures in their HACCP plan that will consistently produce, at a minimum, a 5-log reduction in *Salmonella* species, the most resistant microorganism of public health significance likely to occur in unpasteurized, fresh-squeezed, citrus juice.  See 21 C.F.R. § 120.24.  To obtain the required 5-log reduction, Defendants rely on surface treatment of the citrus fruit; their HACCP plan states that fruit will be immersed for 30 seconds in a chlorine solution of 200 parts per million.  Defendants' HACCP plan, however, does not demonstrate that this control measure results in a 5-log reduction in *Salmonella* species, and a review of the scientific literature suggests that this treatment will not produce the required reduction.  This was a repeat violation.

(b) Defendants failed to analyze their finished juice for *E. coli* prior to January 26, 2006. See 21 C.F.R. § 120.25.  Because Defendants rely on surface treatments rather than pasteurization to obtain the 5-log reduction required by 21 C.F.R. § 120.24, they must consistently analyze their finished juice for *E. coli*.  This was a repeat violation.

(c) Defendants do not list in their HACCP plan the critical control points and critical limits designed to control food hazards inside and outside the plant processing environment.  See 21 C.F.R. §§ 120.7(a)(5), 120.8(b)(3).  Defendants' HACCP plan fails to address one of three critical control points and fails to provide critical limits for two of the critical control points.

COMPLAINT FOR PERMANENT INJUNCTION - 5

The HACCP plan also lacks any procedures to verify or validate the adequacy of the plan, and it does not provide for a record keeping system to document the monitoring of critical limits. See 21 C.F.R. §§ 120.11-.12. This was a repeat violation.

(d) Defendants do not monitor or document sanitation conditions and practices during juice processing to ensure conformance with GMP. See 21 C.F.R. §§ 120.5-.6. No records are maintained with respect to: the maintenance of hand washing, hand sanitizing, and toilet facilities; the protection of food, food packaging, and food contact surfaces from adulteration with chemical, physical, and biological contaminants; the proper labeling, storage, and use of toxic compounds; the control of employee health conditions that could result in the microbial contamination of food; or the exclusion of pests from the food plant. This was a repeat violation.

(e) Defendants' HACCP plan has not been developed, validated, or verified by an individual who has successfully completed training in the application of HACCP principles to juice processing. See 21 C.F.R. § 120.13(b). This was a repeat violation.

### July 2005 Inspection

23. FDA conducted a previous inspection of Defendants' operations on June 29-30, and July 6, 2005. During this inspection, FDA observed numerous HACCP violations, all of which were noted again in the most recent inspection. Specifically, the inspection found that Defendants' HACCP plan was insufficient to obtain the required 5-log reduction in *Salmonella* species; Defendants did not analyze their finished juice for *E. coli*; Defendants' HACCP plan did not identify, monitor, or establish appropriate critical limits for critical control points in the juice manufacturing process; Defendants failed to monitor or document sanitation conditions and practices to ensure conformance with GMP; and Defendants' HACCP plan was not developed, validated, or verified by an individual who had successfully completed juice HACCP training.

### October 2004 Inspection

24. FDA conducted a previous inspection of Defendants' operations on October 27-28, 2004. During this inspection, FDA observed numerous HACCP violations, most of which were noted again in the two subsequent inspections. Specifically, this inspection revealed that Defendants' HACCP plan was insufficient to obtain the required 5-log reduction in *Salmonella*

COMPLAINT FOR PERMANENT INJUNCTION - 6

species; Defendants did not analyze their finished juice for *E. coli*; Defendants' HACCP plan did not identify, monitor, or establish appropriate critical limits for critical control points in the juice manufacturing process; Defendants failed to monitor or document sanitation conditions and practices to ensure conformance with GMP; and Defendants' HACCP plan was not developed, validated, or verified by an individual who had successfully completed juice HACCP training.

### April 2004 Inspection

25. A previous inspection conducted by FDA on April 12-14, 2004 resulted in a Warning Letter being issued to Defendants. In addition to the ongoing violations that have been observed in later inspections, at the time of this inspection, Defendants had no written HACCP plan for the production of juice. Following this inspection and Warning Letter, Defendants prepared a two-page narrative they now maintain constitutes their HACCP plan.

### August 2003 Inspection

26. FDA also conducted an inspection of the firm on August 5-6, 2003. At the time of this inspection, Defendants were not required to comply with the HACCP regulations because the regulations were not yet in effect for "very small businesses" such as Sun Valley. See 21 C.F.R. § 120.1 (giving "very small businesses" a two-year grace period in which to come into compliance with the regulations that went into effect for larger juice processors on January 22, 2002). Defendants were advised during the inspection that they would be required to comply with the regulations in January 2004. FDA also alerted Defendants to the fact that they had no written HACCP plan and employed no control measures sufficient to obtain a 5-log reduction in pathogenic microorganisms.

### PRIOR NOTICE

27. Defendants are well aware that their practices violate the Act. FDA has warned Defendants on numerous occasions that their conduct violates the law and has emphasized the importance of Defendants' compliance with the Act. After the past four inspections, FDA investigators have issued a Form 483 and discussed the observations with Mr. John Scherer.

28. On August 4, 2004, FDA issued a Warning Letter to Mr. Scherer. He responded on November 29, 2004, stating that he would correct the deficiencies observed by FDA "within the

COMPLAINT FOR PERMANENT INJUNCTION - 7

next few months," and he promised that a representative of the firm would attend a juice HACCP training course "as soon as a class time is scheduled." FDA inspected Sun Valley again in July 2005, and discovered that no representative of the firm had completed a juice HACCP training course, but Mr. Scherer attested in a sworn affidavit: "I do intend to comply with the FDA juice HACCP regulations, and plan to send my son William to juice HACCP training." During the most recent inspection of Sun Valley in January 2006, however, FDA investigators determined that no representative of the firm had yet attended the required juice HACCP training.

29. Despite multiple inspections, numerous warnings by FDA, and Defendants' promises that violations would be corrected, Defendants have failed to institute effective measures to bring their juice processing operations into compliance with the law.

30. The United States is informed and believes that, unless restrained by order of this Court, Defendants will continue to violate 21 U.S.C. § 331(k) in the manner set forth above.

WHEREFORE, the United States respectfully requests that this Court:

I. Permanently and restrain and enjoin Defendants Sun Valley Juice Co., a corporation, and John R. Scherer and William Jeremy Scherer, individuals, and each and all of their officers, agents, employees, successors, assigns, attorneys, and any persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships) who receive actual notice of the Court's order, from violating 21 U.S.C. § 331(k) by directly or indirectly causing any article of food, within the meaning of 21 U.S.C. § 321(f), to become adulterated within the meaning of 21 U.S.C. § 342(a)(4), while such food is held for sale after shipment in interstate commerce.

II. Order Defendants Sun Valley Juice Co., a corporation, and John R. Scherer and William Jeremy Scherer, individuals, and each and all of their officers, agents, employees, successors, assigns, attorneys, and any persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships) who receive actual notice of the Court's order, to cease receiving, processing, preparing, packing, holding, and distributing all juice at or from their plant, or at any other location(s) from which Defendants receive, process, prepare, pack, hold, or distribute food, unless and until:

      A.  Defendants bring their receiving, processing, preparing, packing, holding, and distribution operations into compliance with the Act and its implementing regulations to the satisfaction of FDA;

      B.  Defendants destroy all adulterated food currently held in their facilities according to procedures approved by and under the supervision of FDA;

      C.  Defendants establish and implement an adequate written HACCP plan, developed by an independent juice HACCP expert and approved in writing by FDA, that is sufficient to control food safety hazards likely to occur in the processing of unpasteurized, fresh-squeezed, citrus juice, as required by 21 C.F.R. §§ 120.7 and 120.8;

      D.  Defendants have an independent juice HACCP expert validate the adequacy of control measures in Defendants' HACCP plan to consistently produce, at a minimum, a 5-log reduction in *Salmonella* species, as required by 21 C.F.R. § 120.24, and the results of the validation study have been admitted to and approved in writing by FDA;

      E.  Defendants analyze their unpasteurized, finished juice product for *E. coli* in accordance with the frequency and methods of analysis prescribed in 21 C.F.R. § 120.25;

      F.  Defendants have implemented a Sanitation Standard Operation Procedure ("SSOP"), developed by an independent juice HACCP expert and approved in writing by FDA, that ensures that sanitation conditions and practices are monitored and documented before, during, and after juice processing, as required under 21 C.F.R. § 120.6;

      G.  Defendants have successfully completed training in the application of HACCP principles to juice processing, or Defendants have retained the services of a person who has successfully completed such training or who is otherwise qualified through job experience, as required by 21 C.F.R. § 120.13; and

      H.  Defendants have accomplished all of the above to FDA's satisfaction and have been so notified by FDA in writing.

    III.  Grant the United States its costs and such other and further relief as the Court deems just and proper.

Dated this 30th day of May, 2006.

                          Respectfully submitted,

                          THOMAS E. MOSS
                          United States Attorney
                          District of Idaho

By:   /s/
       WARREN S. DERBIDGE
       Assistant U.S. Attorney

       LAUREN E. HASH
       Trial Attorney
       Office of Consumer Litigation
       U.S. Department of Justice
       P.O. Box 386
       Washington, D.C.   20044
       Phone:  (202) 353-1991
       Fax:  (202) 514-8742

Of Counsel:

PAULA M. STANNARD
Acting General Counsel

SHELDON T. BRADSHAW
Chief Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel for Litigation

JENNIFER ZACHARY
Trial Attorney

United States Department of Health and Human Services
Office of the General Counsel
5600 Fishers Lane
Rockville, MD 20857
(301) 827-9572

COMPLAINT FOR PERMANENT INJUNCTION - 10